1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

STARTUP ACADEMY, LLC,                               C04-1996

        Debtor
_____

In re:                                              ORDER

JEFFREY JANI
        Debtor

_____
In re:

SCIMITAR RIDGE RANCH, LLC

        Debtor
_____
In re:

SCIMITAR RIDGE, LLC

        Debtor
_____
In re:

JSJ PROPERTIES, LLC,

        Debtor
_____

ORDER  1–

The Court has reviewed the appellant's appeal brief, the appellee's brief, the appellant's reply brief, and the designated record.  The Court now enters the following Order affirming the bankruptcy court's final order for the reasons stated herein.

## BACKGROUND

This case involves an income tax controversy between the Internal Revenue Service ("I.R.S.") and chapter 7 debtor Jeffrey S. Jani involving a claim for over $3.7 million. Broadly, the I.R.S. claims that many of the business expenses Mr. Jani claimed were in fact "hobby losses" limited by I.R.C. § 183, that is, Mr. Jani was not carrying on the business for profit.  The issue on appeal is whether the bankruptcy court abused its discretion by *sua sponte* rescheduling the trial between the United States, on behalf of the I.R.S. (the "Government" or "Appellant"), and Mr. Jani from the stipulated and court-approved date, January 10, 2005, to September 7, 2004.

On January 16, 2003, Mr. Jani and Startup Academy, LLC, an LLC engaged in consulting services to "startup" internet technology companies in return for stock options, filed chapter 11 petitions.  Subsequently, petitions were filed on behalf of Mr. Jani's closely held companies, Scimitar Ridge Ranch, LLC (property management), Scimitar Ridge LLC (consulting, business retreats, special events), and JSJ Properties, LLC (real estate holding company).  Scimitar Leadership Academy, LLC ("SLA") (educational programs for college students) managed to stay out of bankruptcy.  The five cases were administratively consolidated on May 30, 2003.

The controversy arose when the I.R.S. audited Mr. Jani's Form 1040 individual income tax returns for 1998-2002.  Designated Record, Ex. 14, U.S. Trial Exs. 102-106 (Jani's Tax Returns).  Although Mr. Jani recognized millions of dollars of capital gain from sales of Microsoft stock (he sold an interactive wireless technology to Microsoft in 2000 for $20 million), he reported no tax due.  See id., Ex. 13, 9/8/04 Transcript at 21; Ex. 14, U.S. Trial Exs. 102-106.  He accomplished this by claiming numerous deductions for business

expenses related to his ownership and operation of the Scimitar Ridge Ranch (the "Ranch"). He purchased the Ranch in 1999 for $9 million with the intention of creating a corporate development and training center, including Startup Academy, and an academic institution, SLA, dedicated to business leadership training for college and post-graduate students.  Id., Ex. 14, U.S. Trial Ex. 126 (Combined Disclosure Statement at 3); Ex. 13, 9/8/04 Transcript at 21-22.  Mr. Jani conducted activities on the Ranch through several closely held companies. See id., Ex. 14, U.S. Trial Ex. 126 at 3-5.

In its audit, the I.R.S. disallowed many of Mr. Jani's business expenses on the ground that they were "hobby losses" limited by I.R.C. § 183, that is, Mr. Jani was not carrying on activities at the Ranch "for profit."  Id., Ex. 14, U.S. Trial Exs. 107-108 (revenue agent reports); 109-110 (statutory notices of deficiency).  Also disallowed were expenses for a yacht and certain charitable contributions.  Id.  The audit was completed on or about July 6, 2004.  Statutory notices of deficiency were issued pursuant to I.R.C. § 6212 to Mr. Jani with respect to his federal income tax liabilities for 1999-2002.  Id., U.S. Trial Exs. 109-110. Based on its audit, on August 2, 2004, the I.R.S. filed an amended proof of claim for over $3.7 million in the bankruptcy case.  Id., U.S. Trial Ex. 101.

On June 16, 2004, at the request of the Appellant, the parties stipulated to a January 10, 2005 trial date, which the bankruptcy court entered.  Id., Ex. 5.  On July 16, 2004, the bankruptcy court entered an Order of Sale permitting the chapter 7 Trustee to proceed to sell all real and personal property of the consolidated estate.  The trustee scheduled an auction of the Ranch for Sunday, September 12, 2004.

On August 12, 2004, debtor JSJ Properties filed a motion on shortened notice to reconvert the case to chapter 11 and approve proposed financing of $14 million to be secured by the Ranch.  The motion was heard the next day, Friday, August 13, 2004.  Id., Ex. 8, 8/13/04 Transcript.  At the hearing, the bankruptcy court learned that Mr. Jani's personal corporation, JSJ Properties, LLC ("JSJ"), had received a loan commitment from Capital Plus

ORDER  3–

1   Advantage, LLC. <u>Id.</u>, Ex 8, 8/13/04 Transcript at 4. The loan was for approximately $14

2   million dollars. <u>Id.</u> Based on this loan, JSJ hoped to obtain a letter of credit acceptable to

3   the major creditors in the case in the amount of approximately $13.3 million. <u>Id.</u> JSJ asked

4   the bankruptcy court to approve the loan. All of the creditors, except the Government,

5   agreed that the loan amount would be sufficient to pay off all of the creditors. <u>Id.</u> at 6. The

6   Government's position (communicated by other creditors, as the Government was unable to

7   attend the hearing) was that the $14 million loan was insufficient to cover the $3.7 million it

8   claimed Mr. Jani owed. <u>Id.</u> The trustee also objected to the approval of the loan primarily

9   because it had learned of the possibility of the loan only 24 hours before the hearing and had

10   not had time to fully digest it. The trustee also objected to the potential dismissal of JSJ from

11   the bankruptcy proceeding. <u>Id.</u> at 7-8. The trustee's sale was to be held on September 12,

12   2004, and the bankruptcy court wanted to resolve the tax claim prior to the sale, and possibly

13   facilitate the $14 million loan. <u>Id.</u> at 8-10. Therefore, the bankruptcy court, on its own

14   motion, advanced the trial between the Government and Mr. Jani to September 7, 2004, so

15   that it could be completed prior to the bankruptcy trustee's sale of the Ranch. <u>See id.</u> at 9-

16   10.

17         The Government filed a motion to reinstate the January 2005 trial date. <u>Id.</u>, Ex. 10.

18   At the September 3, 2004, hearing on that motion, counsel for the Government stated,

19         We do have a motion on the calendar today by the Government to reinstate the
       original – what we call the original trial date for this matter, which is January 2005.
20       We fully understand why the Court set [the trial] for next week the way it did. We've
       got the auction sale coming up on Sunday, September 12, and we recognize the
21       benefits to the estate that would approve in liquidating the IRS claim for the sale . . . .
       [W]e will be ready to go on Tuesday with the information that we have, but we just
22       want to point out that we don't think we have the information to put on the best case
       we could. <u>Id.</u>, Ex. 12, 9/3/04 Transcript at 10-11.
23

24   The Government went on to argue that the change in trial date gave it less than one month's

25   notice before trial. The Government argued that it would have conducted extensive

26   discovery to prepare for the case, as it is a complex case involving substantive tax issues. In

     response, SLA argued that the case had been pending for 20 months and the Government had

     ORDER   4–

1   had ample time to conduct discovery.  Further, SLA argued that if it and the other debtors

2   were going to refinance, they would need to know the final dollar amount that the

3   Government was entitled to.  The bankruptcy court denied the Government's motion in an

4   oral ruling.  Id. at 14.  The court reasoned that a successful refinancing in this case would be

5   "a blessed certainty."  Id.  The court further noted that the Government had completed its

6   audit, and thus it would not be at "quite such a disadvantage."  Id.[1]

7       The trial was held on September 7, 2004 through September 8, 2004.  During the

8   course of the trial the Government called four witnesses, three of which are relevant to this

9   appeal.  The first Government witness was Mike Quackenbush, a CPA and certified fraud

10  examiner.  Id., Ex. 13, 9/7/05 Transcript at 49-50.  Mr. Quackenbush testified that SLA, a

11  purported tax-exempt organization, was supporting the for-profit activities of Scimitar Ridge

12  Ranch, LLC.  Id. at 61.  Mr. Quackenbush also testified regarding the purported charitable

13  contribution of Mr. Jani's former Medina waterfront residence to SLA, which was followed

14  by a sale of the property to a third party who paid $3.9 million in cash and made a $1.1

15  million charitable contribution to SLA.  Id. at 66-72.  During the testimony regarding the

16  Medina transaction, the court observed that although there might be a question whether the

17  purchaser could take a charitable deduction on his return for the $1.1 million "contribution,"

18  its relevance to Mr. Jani's tax status was unclear.  Id. at 74-76.  The Government conceded

19  that it did not fully understand the ramifications of the transaction as it had not "had a chance

20  to depose everybody and digest the testimony and so forth."  Id.  Finally, Mr. Quackenbush

21  testified that in his opinion the activity at the Ranch was engaged in for profit.  Id. at 81.

22

23  [1] Further, the bankruptcy court never impeded the Appellant's ability to conduct discovery at
    any time before the hearing commenced on September 7, 2004.  Appellant had nine months
24  from Appellee's December 15, 2003 filing of its objection to the I.R.S.'s previously filed
    Proof of Claim until the hearing on September 7, 2004, in which to conduct formal
25  discovery.  In addition, on August 18, 2004, Appellant scheduled the depositions of Mr. Jani
    and his wife for September 1, 2004 and September 2, 2004, respectively, and then cancelled
26  those depositions despite the Janis' willingness to appear and be deposed.  Appellant's
    Reply, docket no. 10, at 4, n.4.

ORDER  5–

1    The next relevant witness was Andrew Marshall, one of two Seattle-based I.R.S.

2 revenue agents who conducted the audit of Mr. Jani's returns.  Id. at 97-99.  Mr. Marshall

3 confirmed his interview notes that, "Taxpayer doesn't have a breakdown between what

4 expenses are related to for-profit activities and what expenses are related to not-for-profit

5 activities."  Id. at 108.

6    The final relevant witness was Andrew Hartstone.  Mr. Hartstone was the other I.R.S.

7 revenue agent who worked on the audit.  Mr. Hartstone testified that both he and Mr.

8 Marshall had each spent approximately 100 hours on the audit in this case.  Id. at 117-118.

9 Mr. Hartstone confirmed that Mr. Jani, during an interview, stated that there were expenses

10 on his tax return attributable to educational or nonprofit activities.  Id. at 130.  He testified

11 that Mr. Jani claimed to have records segregating for-profit expenses from nonprofit

12 expenses, but he did not provide them to the agents.  Id. at 130-31.

13    Mr. Jani called William Hurtado, who lived at the Ranch from 2000 through 2004 and

14 helped with SLA and with Startup Academy.  Mr. Hurtado testified that all of the activities at

15 the ranch, excluding SLA, were for profit.  Id. at 29.

16    Mr. Jani called Doug Plank, an employee of Startup Academy and a director of SLA.

17 Mr. Plank testified that SLA was a non-profit entity.  Id. at 189-190.  Mr. Plank also testified

18 in detail regarding Startup Academy's business plan.  Id. at 198-204.  Mr. Plank testified that

19 Startup Academy was designed to be a revenue generating venture.  Id.

20    Mr. Jani also testified.  He testified that he intended to make a profit with the business

21 enterprises at the Ranch.  Id., Ex. 13, 9/8/04 Transcript, at 23-24, 63, 65.  Mr. Jani testified

22 that the expenses deducted on his Schedule C were ordinary and necessary business

23 expenses.  Id. at 36-54.  Mr. Jani also testified to deductions he had claimed for his yacht and

24 for donating a bronze statue.  Mr. Jani stated that he bought the yacht in order to get into the

25 business of selling yachts.  Id. at 77-79.  Mr. Jani testified that he commissioned the statue

26 for $350,000.  Id. at 68.  He had it appraised at $1,050,000.  Id. at 71.  Mr. Jani then donated

1  the statue to a foundation in Port Orchard.  Id. at 69.  That foundation sold it at an auction

2  where SLA purchased it for $25,000.  Id. at 73.  The $25,000 is still owed to the foundation.

3  Id. at 74.

4  The bankruptcy court ruled in favor of the Government by disallowing the expenses of

5  the yacht and the charitable contribution claimed for the bronze statue.  Id. at 95-96.  The

6  court ruled that Mr. Jani's charitable donation of his former residence to SLA was allowed,

7  because SLA was duly qualified as a tax-exempt organization.  Id. at 96.  The court ruled

8  that Mr. Jani's activities at the Ranch, other than SLA, were engaged in for profit.  Id. at 96-

9  97.  The court disallowed about $57,000 in improvements that Mr. Jani conceded should

10  have been capitalized and disallowed certain unsubstantiated wage expenses.  Id. at 98.   The

11  effect of these rulings was to reduce Mr. Jani's tax liability to zero.  On September 9, 2004,

12  the bankruptcy court entered an order reducing the I.R.S. claim to zero.  Id., Ex. 15.  The

13  Government appealed the bankruptcy court's final order.

14  ## DISCUSSION

15  ### A.    Standard

16  A denial of a continuance to conduct discovery will be reviewed for abuse of

17  discretion and the decision will be set aside only "upon the clearest showing of actual and

18  substantial prejudice."  Martel v. County of Los Angeles, 56 F.3d 993, 995 (9th Cir. 1995).

19  Prejudice is measured in terms of the reasonable probability that the outcome of the trial

20  would have been different had the continuance been allowed.  Id.

21  ### B.    Abuse of Discretion

22  The trial court has broad discretion to grant or deny a requested continuance and that

23  decision will not be disturbed absent a clear abuse of that discretion.  United States v. Flynt,

24  756 F.2d 1352, 1358 (9th Cir. 1985).  A clear abuse of discretion does not exist unless this

25  Court concludes that the denial was arbitrary or unreasonable.  Id.

26

ORDER   7–

1      The Appellant argues that no bankruptcy purpose was served by the bankruptcy

2  court's denial of its motion to reinstate the January 10, 2005 trial date.  Appellant's Brief,

3  docket no. 5, at 17-18.  The Appellant notes that the bankruptcy court denied the motion in

4  order to facilitate Mr. Jani's attempt, through JSJ, to finalize a $14 million loan commitment,

5  which would have paid off all creditors except the I.R.S. and would have saved the Ranch

6  from being sold at auction.  However, the Appellant argues, the loan failed to close and the

7  sale of the Ranch went forward on September 12, 2004 as planned.  The Appellant further

8  argues that the only beneficiary of the September 7, 2004 trial was Mr. Jani, who was able to

9  litigate without first being required to go through the formal discovery process.

10      The Appellant's argument is flawed because it views the bankruptcy court's actions

11  with the 20/20 vision of hindsight.  At the time that the bankruptcy court made the decision

12  to go forward with the trial on September 7, 2004, there was a real possibility that JSJ could

13  obtain financing sufficient to satisfy all of the creditors other than the I.R.S.  The potential

14  collateral for this loan was to be the Ranch itself.  Therefore, holding the auction as

15  scheduled on September 12, 2004, would have destroyed the chance of securing the loan.

16  The bankruptcy court moved the hearing before the auction to determine to what extent Mr.

17  Jani was indebted to the I.R.S.  The bankruptcy court could then determine whether the loan

18  would be sufficient to pay off the creditors and thus cancel the auction if necessary.  In fact,

19  the Government conceded at a hearing on their motion to reinstate the January 10, 2005

20  hearing date, "We fully understand why the court set [the trial] for next week the way it did.

21  We've got the auction sale coming up on Sunday, September 12, and we recognize the

22  benefits to the estate that would approve in liquidating the I.R.S. claim for the sale."  Id., Ex.

23  12, 9/3/04 Transcript at 10.  The fact that JSJ ultimately could not secure the loan is of little

24  significance.  What matters is whether the bankruptcy court acted arbitrarily or unreasonably

25  in moving the hearing forward in an attempt to facilitate the loan.  As the Government

26  conceded at the August 13, 2004 hearing, the bankruptcy court's motives were clear.  The

1   bankruptcy court did not abuse its discretion when it denied the Government's motion to

2   reinstate the January 10, 2005 hearing date.

3       **C.     Prejudice**

4       Because the bankruptcy court did not abuse its discretion in denying the Appellant's

5   motion to reinstate the trial date, the Court need not reach the issue of actual and substantial

6   prejudice.  However, even had the bankruptcy court abused its discretion, the Appellant has

7   not demonstrated the required showing of actual and substantial prejudice.

8       The bankruptcy court's decision to deny the Appellant's motion to reinstate the

9   January 10, 2005 trial date will be set aside only upon the "clearest showing of actual and

10  substantial prejudice."  Martel v. County of Los Angeles, 56 F.3d 993, 995 (9th Cir. 1995).

11  Prejudice is measured in terms of the reasonable probability that the outcome of the trial

12  would have been different had the continuance been allowed.  Id.

13      The Government details the documents and other accommodations that it would have

14  requested had it had an opportunity to conduct additional discovery.  Appellant's Brief at 16-

15  18.  These include all books and records concerning the ownership and operation of the

16  Ranch and all of its activities, a request for entry upon land to inspect the Ranch and see

17  where the records were kept, and interrogatories to identify any third parties with relevant

18  information and documents.  The Appellant concedes that it is impossible to tell what

19  information it would have gained from the discovery process.  Appellant's Brief at 18.

20  However, Appellant argues that it reasonably believes it would have uncovered documents

21  demonstrating that Mr. Jani controlled all aspects of activities at the Ranch, both for-profit

22  and nonprofit; that Mr. Jani enjoyed significant personal benefit from his relationship with

23  SLA; that Mr. Jani failed to maintain proper books and records; and that Mr. Jani did not

24  observe formal distinctions between for-profit and nonprofit activities.  Appellant's Brief at

25  18-19.  Discovery might also have proved, the Appellant speculates, that up to $3 million in

26  ranch improvements should have been capitalized instead of claimed as current expenses.

ORDER   9–

1    However, piecing together what the Government *might* have discovered had it engaged in

2    more extensive discovery and whether any such discovery would have resulted in a

3    reasonable probability of a different outcome is an exercise in speculation and guesswork.

4    　　　Despite nearly 200 hours auditing Mr. Jani's tax returns, the Government has little

5    evidence that additional discovery would have revealed anything significant regarding Mr.

6    Jani's tax liability.  During the audit, the I.R.S. had broad power to summons Mr. Jani, any

7    third party, and any documents in the possession of Mr. Jani or a third party.  The relevance

8    standard for these subpoenas is only that the summons seek information that might shed light

9    on the taxpayer's liability.  Xelan, Inc. v. United States, 361 F.Supp.2d 459, 463 (D. Md.

10   2005).  The Government argues that with additional discovery, it may have been able to

11   demonstrate at trial that Mr. Jani obtained improper benefits from his association with SLA.

12   The bankruptcy court heard Mr. Quackenbush's opinion that Mr. Jani was in control of SLA,

13   but apparently chose to reject it.  Designated Record, Ex. 13, 9/7/04 Transcript at 53.  Other

14   than this statement by Mr. Quackenbush, the Appellant does not point to any evidence or

15   inference that Mr. Jani received improper benefits from his association with SLA.  All the

16   Appellant provides is speculation.  This is insufficient to demonstrate the necessary showing

17   of actual and substantial prejudice.

18   　　　The remainder of the evidence the Appellant hoped to uncover with additional

19   discovery is also speculative.  The bankruptcy court heard the competing evidence from Mr.

20   Jani and the Government's witnesses on Mr. Jani's failure to allocate expenses between

21   nonprofit and for-profit activities.  The court gave more weight to Mr. Jani's detailed

22   explanation of the expenses which he claimed were necessary and ordinary business

23   expenses. Designated Record, Ex. 13, 9/8/04 Transcript at 36-54.  The Government has not

24   demonstrated that the outcome would have changed had it had the opportunity to conduct

25   additional discovery.  Further, the bankruptcy court found that certain improvements, worth

26   approximately $57,000, should have been capitalized.  The Government provides no detail as

ORDER   10–

to why it believes this outcome would have been different had it been able to conduct additional discovery.

Based on the foregoing, the Government has not demonstrated the necessary showing of actual and substantial prejudice.

## CONCLUSION

The bankruptcy court did not abuse its discretion when it denied the Appellant's motion to reinstate the January 10, 2005 trial date and the Appellant has not demonstrated actual and substantial prejudice.  The Court AFFIRMS the bankruptcy record on appeal.

DATED this 28th of June, 2005.

Thomas S. Zilly
United States District Judge

ORDER   11–